UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60712-CIV-ROSENBAUM
(Consent Case)

JEANNINE V. DUCHATEAU,

       Plaintiff,

v.

CAMP DRESSER & MCKEE, INC.,

       Defendant.

_____/

## ORDER

This matter comes before the Court upon Defendant Camp Dresser & McKee, Inc.'s Motion *in Limine* [D.E. 40]. The Court has reviewed Defendant's Motion, all filings in support thereof and in opposition thereto, and the record in this matter. After careful consideration, the Court now grants in part and denies in part Defendant's Motion for the reasons set forth below.

### *I. Background*

In its current status, this matter involves a claim that Defendant Camp Dresser & McKee, Inc. ("CDM"), retaliated against Plaintiff Jeanine V. DuChateau for exercising her rights under the Family and Medical Leave Act ("FMLA"), *see* 29 U.S.C. §§ 2601–2654. More specifically, DuChateau argues that CDM retaliated against her for taking FMLA leave when it removed her as a manager of a project called Go Green.

CDM seeks through the pending Motion *in Limine* to exclude from evidence CDM employee Steve Brewer's remarks from August 2008 in which he allegedly commented that DuChateau had

been "irresponsible" in becoming pregnant when she was supposed to be managing the Go Green contract and that he had done "such a hard job to sell her to" the client, and "now she can't manage this contract like she agreed to." *See* D.E. 19 at 2, ¶ 8; D.E. 26-2 at 1, ¶ 8.

The Court has previously summarized the parties' factual allegations in this matter in ruling on CDM's Motion for Summary Judgment. *See* D.E. 41. Because CDM's Motion *in Limine* depends in part on the relevancy of the evidence that CDM seeks to exclude, however, the Court repeats here, in pertinent part, the statement of allegations set forth in its prior Order to consider in context the relevancy, if any, of the Brewer statements to the FMLA retaliation claim.

CDM provides consulting, engineering, construction, and operation services for public and private clients in the United States and around the world. *See* D.E. 19 at 1, ¶ 1. As pertinent here, these services include developing renewable-energy management solutions. *See id.* at 1, ¶ 2. Plaintiff Jeannine V. DuChateau started working for CDM in 2007. *See id.* at 2, ¶ 3. DuChateau worked as a project lead in CDM's Management Consulting Division, first in Tampa and later in West Palm Beach. *See id.*

In early 2008, DuChateau and other CDM employees began working on "Go Green," a proposed environmental project for long-time CDM client Lockheed Martin ("Lockheed"). *See id.* at 2, ¶ 5. Go Green involved plans for Lockheed to improve conservation of resources, engage in recycling efforts, and conduct other environmental activities at its domestic facilities. *See id.* Throughout 2008, DuChateau was being considered for a project-management role in Go Green, in which she would manage the overall project from CDM's side. *See id.* at 2, ¶ 6.

In August 2008, Plaintiff announced her intention to take maternity leave beginning in January 2009, the approximate time that Go Green would be implemented if everything went as

planned. *See id.* at 2, ¶ 7. When DuChateau made this announcement, Go Green was still in the initial planning stages. *See id.*

Later that month, DuChateau overheard Steve Brewer, who managed CDM's client relationship with Lockheed, tell another CDM employee on a conference call that DuChateau was "irresponsible" for getting pregnant when she was supposed to be managing the Go Green contract. *See* D.E. 19 at 2, ¶¶ 8-9; D.E. 26-2 at 1, ¶¶ 8-9. Brewer further remarked that he had done "such a hard job to sell her to" Lockheed and "now she can't manage this contract like she agreed to." *See* D.E. 19 at 2, ¶ 8; D.E. 26-2 at 1, ¶ 8.

DuChateau promptly called another of her supervisors, Phil Chernin, to complain about Brewer's comments. *See* D.E. 19 at 3, ¶ 10; D.E. 26-2 at 2, ¶ 10. She also spoke with Brewer, who did not apologize for the remarks but asked DuChateau to remain on the Go Green project. *See* D.E. 19 at 3, ¶ 10; D.E. 26-2 at 2, ¶ 10. Thereafter, Brewer made no comments that DuChateau found inappropriate. *See* D.E. 19 at 3, ¶ 11; D.E. 26-2 at 2, ¶ 11. He did, however, frequently ignore e-mails from DuChateau and sometimes failed to attend scheduled meetings with her. *See* D.E. 26-2 at 2, ¶ 11. Further, although Brewer told DuChateau that she was to serve as Go Green's project manager, he did not give her access to electronic project-management tools and entered his own name into the system as project manager. *See id.*

Because of DuChateau's planned maternity leave, CDM had to re-evaluate its proposed management team for Go Green. *See* D.E. 19 at 3, ¶ 12. In September 2008, CDM hired Nancy Wheatley into its Program Management Group. *See id.* at 3, ¶ 13. Wheatley, a graduate of Massachusetts Institute of Technology, had many years of experience working on health, environmental, and safety projects in the public and private sectors. *See id.* CDM placed Wheatley

into the role of project manager for Lockheed's remediation program, which included supervision of the Go Green project. *See id.* at 3, ¶ 14; D.E. 26-2 at 2, ¶ 14. Wheatley described the management structure of Go Green as "not particularly well formed" when she arrived. *See* D.E. 19 at 3-4, ¶ 14; D.E. 26-2 at 2, ¶ 14.

Upon Wheatley's arrival, it was determined that DuChateau would serve as deputy program manager for Go Green and that Tom Pedersen, a veteran CDM employee with environmental expertise, would assist with strategy development for the project. *See* D.E. 19 at 4, ¶ 15; D.E. 26-2 at 2, ¶ 15. DuChateau's role as deputy program manager was a project assignment and did not affect her compensation, benefits, or terms of employment. *See* D.E. 19 at 4, ¶ 16. Another employee in CDM's Management Consulting Division, Andrew Brady, was assigned to work with DuChateau on Go Green. *See id.* at 4, ¶ 17. Brady was being considered to serve as interim deputy program manager while DuChateau was on maternity leave. *See id.*

Throughout the fall of 2008, Wheatley, DuChateau, Pedersen, and Brady worked with Lockheed on developing Go Green. *See* D.E. 19 at 4, ¶ 18; D.E. 26-2 at 3, ¶ 18. Wheatley and DuChateau often disagreed on work-related issues. *See id.* Wheatley was concerned about DuChateau's ability to serve in a team-management role for Go Green and repeatedly criticized DuChateau for her incompetence. *See id.* According to Wheatley, Lockheed's Go Green manager, Kevin Pearson, expressed the view that DuChateau lacked "big picture perspective" and thus was not the right person to be "managing the Go Green work" for CDM. *See* D.E. 19 at 4, ¶ 19. DuChateau, however, believes that she was not incompetent and that CDM brought in Wheatley (as well as Pedersen) to force DuChateau off the project because of her pregnancy. *See* D.E. 26-2 at 3, ¶¶ 18, 20. DuChateau testified that before Wheatley joined CDM, DuChateau had worked with

Lockheed on other matters and that no one had ever expressed concerns about her work product. *See* D.E. 26-2 at 2, ¶ 14; *id.* at 3, ¶ 19. DuChateau also noted in her deposition that Pearson was the Lockheed manager "who named [DuChateau] as the person he wanted on the project." D.E. 21-1 at 87.

On the morning of December 22, 2008, Plante informed DuChateau that she had been removed from the Go Green project. *See* D.E. 19 at 5, ¶ 24; D.E. 26-2 at 3, ¶¶ 24-25. Although DuChateau contends that Wheatley was the person who removed her from the project, Wheatley denies that she (or anyone else) had made a decision about DuChateau's future role in the project. *See* D.E. 19 at 5, ¶ 24; *id.* at 6, ¶ 28; D.E. 26-2 at 3, ¶ 24. Plante told DuChateau that she should resign from the project and that other work would be found for her. *See* D.E. 26-2 at 4, ¶ 28.[1]

Shortly after DuChateau's discussion with Plante, several CDM employees, including Brewer, Wheatley, and DuChateau, held a conference call regarding Go Green. *See* D.E. 19 at 5, ¶ 22. On this call, Brewer announced that Pedersen would serve as interim deputy program manager for Go Green while DuChateau was on maternity leave. *See id.* During the call, DuChateau interrupted Brewer and asked if she would be allowed to return to the project after her leave. *See id.* at 5, ¶ 23. DuChateau claims that Brewer did not respond to her question. *See* D.E. 26-1, ¶ 4. Wheatley found DuChateau's behavior on the call to be unprofessional. *See* D.E. 19 at 5, ¶ 23.

The next day, DuChateau had a scheduled phone conversation with Wheatley to discuss Go Green and DuChateau's role in the project. *See* D.E. 19 at 6, ¶ 27; D.E. 26-2 at 4, ¶ 27. Wheatley described the call as "unpleasant" and recalled DuChateau as being very upset and "ranting."

---

[1]Although he was DuChateau's supervisor, Plante did not work on Lockheed projects and lacked the authority to remove DuChateau from Go Green. *See* D.E. 19 at 5, ¶ 25; D.E. 26-2 at 3, ¶ 25.

*See* D.E. 19 at 6, ¶ 27. According to Wheatley, DuChateau stated that she would never work on Lockheed projects again. *See id.* at 6, ¶ 28. Wheatley therefore considered DuChateau to have resigned from the Go Green project. *See id.* For her part, DuChateau denies that she ever voluntarily removed herself from the project. *See* D.E. 26-2 at 4, ¶ 28. She recounts that during their conversation, Wheatley raised numerous issues about DuChateau's performance and repeatedly asked whether she was going to resign from Go Green. *See* D.E. 21-1 at 138-39. DuChateau responded that she already knew that Wheatley had removed her from the project. *See id.* at 139.

In a December 29, 2008, e-mail to Plante, DuChateau stated that she no longer wished to work on the Go Green project. *See* D.E. 19 at 6, ¶ 29; D.E. 26-2 at 4, ¶ 29. DuChateau notes, however, that she wrote this e-mail after Plante had informed her that she had already been removed from the project and had instructed her to resign from it. *See* D.E. 26-2 at 4, ¶ 29.

In early January 2009, DuChateau started her maternity leave. *See* D.E. 19 at 6, ¶ 29. At the same time, CDM's Management Consulting Division began experiencing a significant decrease in its workload. *See id.* at 6, ¶ 30. As a result, CDM implemented layoffs, furloughs, and hour reductions for employees in that division. *See id.* Among those laid off was Brady, who had worked with DuChateau on Go Green and had been considered to serve as interim deputy program manager in her absence. *See id.* at 6, ¶ 31. Nevertheless, Pedersen, who did serve as interim deputy program manager before later being named as the permanent deputy program manager, was not laid off. *See* D.E. 21-3 at 20, 22, 24. In addition, CDM's role in the Go Green project was substantially reduced because new management at Lockheed decided to have their own personnel perform much of the work. *See* D.E. 19 at 7, ¶ 32. Lockheed's original $1.6 million budget for CDM's work on the project was reduced to less than "several hundred thousand dollars." *See id.* at 7, ¶ 33.

When her maternity leave ended in April 2009, DuChateau returned to work in the same position in CDM's Management Consulting Division. *See id.* at 7, ¶ 34. She maintained a normal workload, and her duties, pay, and benefits were unchanged. *See id.* at 7, ¶ 36. Pedersen, who was now serving as deputy program manager for Go Green, asked DuChateau if she was interested in working on what remained of that project. *See id.* at 7, ¶ 34. Although Pedersen claims that DuChateau declined this offer, DuChateau denies that she refused to work on the project. *See id.* at 7, ¶ 35; D.E. 26-2 at 4, ¶ 35. To the contrary, DuChateau testified that she agreed to help with any Lockheed work that was available but that no such work materialized. *See* D.E. 21-1 at 119-20, 133, 210; D.E. 26-2 at 3, ¶ 19.

In June 2009, as a result of the overall slowdown in work in her division, DuChateau's weekly hours were reduced from 40 to 32, and later from 32 to 24. *See* D.E. 19 at 7-8, ¶¶ 36, 37; D.E. 26-2 at 4, ¶ 30. Soon thereafter, DuChateau received a job offer from one of CDM's competitors, for which she had previously worked before joining CDM. *See* D.E. 19 at 8, ¶¶ 38, 39. After receiving this offer, DuChateau contacted Plante and asked if CDM was conducting voluntary layoffs of employees. *See id.* at 8, ¶ 40. DuChateau and Plante discussed her situation, and they mutually agreed that she would be laid off so that she could receive a severance payment. *See id.* at 8, ¶ 41. DuChateau was subsequently laid off and received a severance payment that she considered to be "very fair." *See id.* at 8, ¶ 42. One week later, DuChateau began working in her new job. Although her initial annual salary was about $10,000 less than what she made at CDM, the difference is now about $5,000. *See id.* at 8, ¶ 43; D.E. 26-2 at 5, ¶ 43.

Returning to the Motion *in Limine* currently before the Court, CDM seeks to exclude any evidence of Brewer's August 2008 remarks, suggesting that such evidence is not relevant to the issue

before the Court because, according to CDM, Brewer was not a "decisionmaker" who determined that DuChateau should be removed from the Go Green project and because Brewer's comments were nothing more than "stray remarks." *See* D.E. 40 at 1-2.  Moreover, even if the evidence had some relevancy, CDM asserts in the alternative, any value would be outweighed by the unduly prejudicial effect of the evidence.  Consequently, CDM concludes, evidence of Brewer's remarks should be excluded from trial.  CDM also seeks to preclude as irrelevant the introduction of evidence of DuChateau's alleged emotional suffering after leaving CDM's employment.

In response, DuChateau concedes that evidence relating to her post-CDM-separation emotional suffering is not relevant and does not object to CDM's Motion *in Limine* in this regard. This Court agrees and therefore grants the Motion *in Limine* as it regards evidence of post-CDM-separation emotional suffering.

With respect to Brewer's statements, DuChateau contests CDM's characterization of Brewer's role on the Go Green project, contending that Brewer had the "primary supervisory responsibility" on the project and that both DuChateau and Wheatley reported to him.  *See* D.E. 50-1 at 2.  DuChateau further notes that Brewer conducted the conference call on December 22, 2008, in which Plaintiff asked whether she would be permitted to return to the Go Green project after her maternity leave, and, according to DuChateau, Brewer did not respond to the question.  Based on these allegations, DuChateau urges, the evidence is relevant, and its probative value is not unfairly outweighed by its prejudicial effect.

## *II.  Discussion*

Rule 402, Fed. R. Evid., renders inadmissible evidence that is not relevant.  *See* Fed. R. Evid. 402. Rule 401, Fed. R. Evid., in turn, defines "relevant evidence" as "evidence having any tendency

to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, CDM suggests two reasons why the Brewer statements do not satisfy the definition of relevancy: (1) Brewer allegedly was not the decisionmaker who removed DuChateau from the Go Green project, and his comments were not associated with the decision to remove DuChateau, and (2) the statements constituted nothing more than irrelevant "stray remarks."

With regard to the first reason that CDM asserts, the Court concludes that Brewer's role, if any, in the decision-making process, and the place, if any, of Brewer's statements in the decision to remove DuChateau as a Go Green manager present factual questions. On the one hand, CDM asserts that DuChateau removed herself as a project manager when she resigned the position. But DuChateau denies that she voluntarily resigned, claiming instead that Wheatley had decided to remove her from Go Green, and Plante told her that she should resign from the project. DuChateau further argues that it was Brewer who told DuChateau originally that she was to serve as Go Green's project manager, but he did not give her access to electronic project-management tools and entered his own name into the system as project manager. Moreover, DuChateau suggests, Brewer continued to act in a supervisory capacity on the Go Green project (above Wheatley),[2] and during the December 22, 2008, conference call, which involved Brewer, Wheatley, and DuChateau, Brewer was the one who announced that Pedersen would serve as interim deputy program manager for Go Green while DuChateau was on maternity leave. When DuChateau interrupted Brewer and asked if she would

---

[2]In its Reply, CDM cites to DuChateau's deposition transcript for the proposition that Brewer "had no supervisory authority over her." *See* D.E. 52 at 2-3. Duchateau's complete answer to the question regarding whether Brewer had supervisory authority over her, however, is as follows: "Not that I believe. Just maybe within the project he'd have input to my supervisor because they inputted with him in my review." *See* D.E. 21-1 at 60:22-61:1.

be allowed to return to the project after her leave, DuChateau claims, Brewer did not respond to her question.

As previously determined in this Court's Order on CDM's Motion for Summary Judgment, DuChateau has entered into the record of this case evidence of the facts as she alleges them above. Because a material question of fact is presented by the evidence that DuChateau raises, it is not the function of this Court to determine whether a jury will believe the evidence of these allegations that DuChateau may present at trial. But, if a jury does credit DuChateau's evidence and agrees with her version of the facts, it could fairly conclude that although Brewer originally discussed with DuChateau the Go Green project-manager position, after learning of her pregnancy and her intent to take leave, Brewer expressed his disappointment with DuChateau's decision, identified himself as the Go Green project manager, and subsequently participated in the decision to remove DuChateau as a project manager for Go Green. Thus, CDM's first proposed basis for finding the Brewer statements irrelevant must fail.

As for CDM's second reason — that Brewer's statements were nothing more than irrelevant "stray remarks," the Court considers CDM's characterization of Brewer's comments. While, as the Court noted in its Summary Judgment Order, Brewer's statements do not fall into the category of such "blatant" comments that they constitute direct evidence of discrimination, *see* D.E. 41 at 17 n.5 (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)), they are not so insignificant or unrelated as to be written off as mere "stray remarks." Indeed, unlike statements in other cases found to constitute "stray remarks" because they either do not regard the plaintiff or do

not occur in the nucleus of facts pertaining to the challenged employment decision,[3] Brewer's comments relate both to DuChateau and to Brewer's perception of how DuChateau's pregnancy and her related maternity leave would affect her job performance. And, as discussed above, DuChateau has presented evidence that, if believed by a jury, could establish that Brewer was involved in the decision to remove DuChateau from Go Green.

The Eleventh Circuit has held that allegedly discriminatory comments that may not be blatant enough to serve as direct evidence of discrimination may, nonetheless, constitute relevant circumstantial evidence when "read in conjunction with the entire record" and "considered together with" the other evidence in the case. *See Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291-92 (11th Cir. 1998); *Scott*, 295 F.3d at 1229-30 (11th Cir. 2002) (citing *Ross*, 146 F.3d at 1291-92, and *Rojas*, 285 F.3d at 1343 (11th Cir. 2002)); *see also, e.g., Burke v. Lab. Corp. of Am.*, 2009 WL 3157633, *2 (M.D. Fla. Sept. 25, 2009). Here, as set forth in the Summary Judgment Order, *see* D.E. 41 at 23-24, DuChateau relies on circumstantial evidence of pretext in addition to Brewer's comments: DuChateau disputes Wheatley's claim that she was incompetent, asserting that this was merely an excuse for CDM to force DuChateau off the Go Green project because of her pregnancy. In support of this position, DuChateau has offered sufficient evidence to allow a reasonable jury to discredit CDM's allegations of poor performance if that jury chose to believe the evidence that DuChateau proffers.

First, DuChateau testified that before Wheatley joined CDM, DuChateau had worked with Lockheed on other matters and no one had ever expressed concerns about her work product. Second,

---

[3] *See, e.g., Scott v. Suncoast Beverage Sales, Ltd., PMBA, Inc.*, 295 F.3d 1223, 1229-30 (11th Cir. 2002); *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002).

DuChateau testified that Pearson, who Wheatley claims disapproved of DuChateau's management role in Go Green, was the Lockheed manager "who named [DuChateau] as the person he wanted on the project." D.E. 21-1 at 87. Third, DuChateau offered specific examples of incidents in which Wheatley allegedly trumped up criticism of DuChateau. For example, DuChateau testified that Wheatley criticized her for failing to make certain revisions to a document when, in fact, DuChateau had revised the document as Wheatley had directed. *See* D.E. 21-1 at 111-12. According to DuChateau's deposition, Wheatley's comments made clear that she had never even looked at the revised document. *See id.* To the extent that a jury believes DuChateau's evidence in this regard, this evidence suffices to render Brewer's comments relevant to the question of whether CDM took away DuChateau's project assignment because she chose to exercise her FMLA rights.

The Court therefore turns to CDM's alternative proposed basis for excluding the Brewer evidence: Rule 403. Under Rule 403, a court may exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The Eleventh Circuit has emphasized repeatedly that courts should use Rule 403 to exclude evidence only "very sparingly." *See, e.g., Wilson v. Attaway*, 757 F.2d 1227, 1242 (11th Cir. 1985); *Luka v. City of Orlando*, 382 F. App'x 840, 841 (11th Cir. 2010); *Tambourine Comercio Internacional v. Solowsky*, 312 F. App'x 263, 287 (11th Cir. 2009). Moreover, in determining whether evidence should be excluded under Rule 403, courts must "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its prejudicial impact." *Luka*, 382 F. App'x at 841 (quoting *United States v. Brown*, 441 F.3d 1330, 1362 (11th Cir. 2006)) (quotation marks omitted); *see also Tambourine Comercio*

*Internacional*, 312 F. App'x at 287 (quoting *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989)). Indeed, analysis under Rule 403 requires that "[t]he balance . . . be struck in favor of admissibility." *Tambourine Comercio Internacional*, 312 F. App'x at 287 (quoting *United States v. Tinoco*, 304 F.2d 1088, 1120 (11th Cir. 2002) (citation & quotation marks omitted)). Nonetheless, district courts enjoy "wide discretion" in determining whether to exclude evidence under Rule 403. *Wilson*, 757 F.2d at 1242 (citations omitted).

When viewed in the light most favorable to admission, the Brewer statements should not be excluded under Rule 403, especially considering the Eleventh Circuit's cautionary direction that Rule 403 be used only "very sparingly" to exclude otherwise admissible evidence. Brewer's remarks relate to DuChateau, not another employee, and they regard the specific pregnancy that served as the basis for DuChateau's FMLA leave for which she alleges CDM retaliated against her. And, it was Brewer who announced the interim Go Green project manager and allegedly declined to respond to DuChateau's question regarding whether she would be able to return to the position upon completion of her FMLA leave. If DuChateau's version of the evidence is accepted, therefore, Brewer participated in CDM's decision to remove DuChateau as a project manager on Go Green. Under these circumstances, any prejudicial effect of Brewer's comments is outweighed by their probative value. Accordingly, Defendant's Motion *in Limine* to exclude Brewer's statements must be denied.

### *III. Conclusion*

For the foregoing reasons, Defendant Camp Dresser & McKee, Inc.'s Motion *in Limine* [D.E.

40] is **GRANTED IN PART and DENIED IN PART**, consistent with the terms of this Order.

**DONE AND ORDERED** this 19th day of December 2011.

_____
ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of Record